S. Martin GORDON; Eric Ole Thorsen and Joel J. Flick, Plaintiffs–Appellees,

v.

COUNTY OF ROCKLAND, The County of Rockland, Defendant–Appellant,

C. Scott Vanderhoef; Paul V. Nowicki, Defendants.

No. 1070, Docket 96–9192.

United States Court of Appeals, Second Circuit.

Argued Feb. 12, 1997.

Decided March 27, 1997.

John D. Winter, Patterson, Belknap, Webb & Tyler, L.L.P., New York City, for Defendant–Appellant.

Michael H. Sussman, Sussman, Bergstein, Wotorson and Whateley, Goshen, NY (Stephen Bergstein, Sussman, Bergstein, Wotorson and Whateley, Goshen, NY, on the brief) for Plaintiffs–Appellees.

Before: JACOBS, CALABRESI, and LAY,* Circuit Judges.

* Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, sitting by designation.

LAY, Circuit Judge.

Assistant County Attorneys for the County of Rockland, New York, terminated by the County Attorney in 1994, bring this action pursuant to 42 U.S.C. § 1983, alleging their dismissal was unconstitutional under the First Amendment. The County of Rockland and its individual representatives appeal the court's judgment entered on a jury verdict in favor of the plaintiffs.

*Background*

When C. Scott Vanderhoef, a Republican, was elected Rockland County Executive in 1993, he appointed Paul Nowicki, also a Republican, as County Attorney. In 1994, Nowicki terminated S. Martin Gordon, Eric Ole Thorsen, and Joel J. Flick, all registered Democrats, from their positions as Assistant County Attorneys. Gordon, Thorsen, and Flick brought this suit against Vanderhoef, Nowicki,[1] and Rockland County, alleging their dismissal was politically motivated and violated the First Amendment.

At trial, the district judge placed two issues before the jury: (1) whether Gordon, Thorsen, and Flick were terminated for political reasons, and (2) whether the termination was a constitutional violation. The jury answered these questions in the affirmative.

■ The County does not contest the jury's finding that the dismissals were politically motivated. Thus, the sole issue on appeal is whether the plaintiffs are entitled to First Amendment protection. In *Elrod v. Burns,* the Supreme Court concluded that the politically motivated dismissals of employees in the Cook County, Illinois Sheriff's Office were an unconstitutional interference with the employees' First Amendment freedoms of political belief and political association. 427 U.S. 347, 373, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976). At the same time, the Court observed that such protection did not extend to "policymaking positions." *Id.* at 367, 96 S.Ct. at 2687. In *Branti v. Finkel,* the Court determined that this exemption extended to confidential employees as well. 445 U.S. 507, 517–18, 100 S.Ct. 1287, 1294–95, 63 L.Ed.2d 574 (1980). The *Branti* Court held that Assistant Public Defenders of Rockland County were not within the policymaker/confidential employee exception, and therefore were entitled to First Amendment protection. *Id.* at 519, 100 S.Ct. at 1295. It also recast the exception, noting that the focus should be not on the policymaking aspect of a plaintiff's employment, but rather on whether "party affiliation is an appropriate requirement" for effective job performance. *Id.* at 518, 100 S.Ct. at 1295. The issue thus presented is whether the jobs held by Gordon, Thorsen, and Flick fall within the exception to First Amendment protection crafted by *Elrod, Branti,* and their progeny.[2]

---

1. The plaintiffs voluntarily dismissed their claims against defendants Vanderhoef and Nowicki.

2. The plaintiffs argue that, because the County failed to raise its argument that the plaintiffs were political employees not protected by the First Amendment in its motion for judgment as a matter of law, we are foreclosed from considering that argument on appeal. We disagree.

   A motion for judgment as a matter of law must "specify the judgment sought and the law and the facts on which the moving party is entitled to make judgment." Fed.R.Civ.P. 50(a)(2). We have thus held that, in making a motion under Rule 50(a), "[t]he moving party must set forth a statement of the specific grounds it relies on for the relief sought. The adequacy of a directed verdict motion is tested by whether counsel observed the specificity requirement of Rule 50(a)." *Samuels v. Air Trans. Local 504,* 992 F.2d 12, 15 (2d Cir.1993).

   When the County moved for judgment as a matter of law pursuant to Rule 50(a), it did not

mention the *Elrod–Branti* issue to the trial court, arguing instead only that certain named defendants had not been linked to the acts in question and that punitive damages were unwarranted. While the County was so arguing, Judge Brieant intervened and on his own discussed the *Elrod–Branti* issue. The County did not need to press the point further because Judge Briant was aware of it and immediately ruled on it. *See Wilson Sporting Goods v. David Geoffrey & Assocs.,* 904 F.2d 677, 683 (Fed.Cir.1990) (rejecting the appellee's argument that the appellant had failed to meet Rule 50's specificity argument because "the court cut short counsel's statement, making clear its view that the issue presented a jury question and that it wanted to move on to consider the jury instructions. It would be unfair to require counsel to have developed a statement of evidentiary shortcomings which the magistrate obviously did not want to hear."). Moreover, both the plaintiffs and the court were well aware of the *Elrod–Branti* issue—it formed the basis for the County's initial summary judgment motion and it was the central issue at trial.

*Nature of the Positions at Issue*

■ The parties engage in much debate over whether the written job description or the duties actually performed should control. The idea that job performance (rather than job description) should control *Elrod–Branti* analysis has been consistently rejected by this court and others. *See Regan v. Boogertman,* 984 F.2d 577, 580 (2d Cir.1993) ("[W]e do not merely look at her actions taken while in office. Rather, we also look at the power with which she is vested by law, and which is inherent in the office."); *Williams v. City of River Rouge,* 909 F.2d 151, 154 (6th Cir.1990) ("When examining a public office for first amendment protection against politically-motivated dismissal, the relevant focus of analysis is the inherent duties of the position in question, not the work actually performed by the person who happens to occupy the office.") (citations omitted); *Meeks v. Grimes,* 779 F.2d 417, 419 n. 1 (7th Cir.1985) ("[O]ur focus is on the 'inherent powers' of the office, not what any individual officeholder actually does."). Instead, as this authority makes clear, this court's challenge is to discern the *duties inherent* in the offices held by the plaintiffs.

The County's written job description for the position of Assistant County Attorney lists the "distinguishing feature[ ] of the class" as "involving the responsibility for representing the County in court cases and in the performance of other legal work." Each of the plaintiffs, of course, worked on tasks narrower than the broad charge contained in the written description.

Gordon specialized in real property law, and handled Sewer Commission affairs. His duties included negotiating real property purchases and other contracts, assisting the Sewer Commission to implement the wishes of the County Legislature (the Legislature), advising the Sewer Commission on the legality of its actions, handling the origination of the County's electric utility agency, acting as a liaison between the Legislature and the utility companies, and litigating on behalf of the County. Thorsen provided general legal services to the Highway Department, gave legal advice to the County's Planning and Parks Agencies, worked on the acquisition of property, helped prepare contracts for public works, and litigated on behalf of the County. Flick was an attorney in the Office of Community Development, and advised municipal governments within the County as to whether their actions were in compliance with federal law. His written job description includes such duties as representing the County, meeting with municipal officials, and preparing legal documents, including contracts and resolutions.

The essential nature of all three positions encompasses these last three duties. Each attorney was a legal advisor to a particular segment of county government, and represented the County in that capacity. The critical issue is whether these duties warrant First Amendment protection from termination for political affiliation.

*Standard of Review*

■ The district judge placed the ultimate constitutional question before the jury; thus, this court must clarify whether analysis of *Elrod–Branti* protection is a question of fact or a question of law. Perhaps *Elrod* itself provides the answer. In discussing the politically motivated discharge of employees from the Cook County Sheriff's Office, the Supreme Court observed, "This involves solely a question of constitutional interpretation, a function ultimately the responsibility of this Court." 427 U.S. at 352, 96 S.Ct. at 2679. Additionally, in *Ness v. Marshall,* the Third Circuit held that "[w]here, as a matter of law, a person is determined to have occupied a policymaking position, that person's claims to protection from patronage dismissal under *Elrod* and *Branti* are disposable on a motion for summary judgment." 660 F.2d 517, 522 (3d Cir.1981). And in *Bauer v. Bosley,* the Eighth Circuit held that where the "nonpolicymaking, nonconfidential nature" of the job

---

Under these circumstances, Rule 50's specificity requirement adds nothing. *See* 5A James W. Moore, MOORE's FEDERAL PRACTICE, ¶ 50.04 (the purposes of the specificity requirement "are twofold: (1) to assure that the trial court has an adequate basis for its decision; and (2) to afford the adverse party the opportunity to correct any possible infirmities in the proof presented") (footnotes omitted).

at issue is clear from the record, the issue is one for the court. 802 F.2d 1058, 1062 (8th Cir.1986).

Finally, other circuits, including this one, assume the issue is one of law, and treat it as such. For example, in *Vezzetti v. Pellegrini*, this court, affirming summary judgment, examined Vezzetti's position, applying the legal standard de novo.[3] 22 F.3d 483, 486 (2d Cir.1994); *see also Regan*, 984 F.2d at 580 (affirming summary judgment for the employer and engaging in an "independent factual analysis of several factors to determine whether the position falls within the political dismissal exception contemplated in *Branti*"); *Williams*, 909 F.2d at 155 ("*Branti* left it to courts to make the case-by-case decision whether a particular government employee qualifie[s] for first amendment protection against politically-motivated dismissal...."); *Savage v. Gorski*, 850 F.2d 64, 69 (2d Cir. 1988) (holding as a matter of law that "[t]here are sufficient indicia here to locate all three positions at the policymaking end of the Erie county government spectrum"); *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 242 (1st Cir.1986) (en banc) ("[The] court's function, it seems to us, is to do what courts are often called upon to do—to weigh all relevant factors and make a common sense judgment in light of the fundamental purpose to be served.").

Under these principles, this court reviews de novo the constitutionality of the dismissals at issue here.[4]

*First Amendment Analysis*

■ The Supreme Court in *Branti*, considering the relative merits of exempting the public defenders from First Amendment protection, emphasized two characteristics of the public defenders' jobs important to its decision. First, a public defender's duty "is not to the public at large," but instead "to serve the undivided interests of his [individual] client[s]." 445 U.S. at 519, 100 S.Ct. at 1295

(quoting *Ferri v. Ackerman*, 444 U.S. 193, 204, 100 S.Ct. 402, 409, 62 L.Ed.2d 355 (1979)). Second, the confidential information to which a public defender is privy arises "out of various attorney-client relationships, [and] has no bearing whatsoever on partisan political concerns." *Branti*, 445 U.S. at 519, 100 S.Ct. at 1295. The Court explicitly noted that its conclusion as to public defenders "is in contrast to the broader public responsibilities of an official such as a prosecutor." *Id.* at 519 n. 13, 100 S.Ct. at 1295 n. 13 (citing *Newcomb v. Brennan*, 558 F.2d 825, 830–31 (7th Cir.1977) (upholding the politically motivated dismissal of a deputy city attorney against a First Amendment challenge)). The positions at issue here are of a different nature than that of a public defender. Gordon, Thorsen, and Flick had as their client not individuals, but the County. In addition, they were privy to confidential information held by elected officials, and charged with implementing the policy of those officials.

Our test applying the principles set forth in both *Elrod* and *Branti* has grown from a general standard to a list of specific factors courts should consider. In *Savage*, we interpreted *Branti* to mean that "political affiliation is an appropriate requirement when there is a rational connection between shared ideology and job performance." 850 F.2d at 68. In *Vezzetti*, we applied eight factors to determine that the plaintiff, a Superintendent of Highways, was not entitled to First Amendment protection.

These factors include whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected offi-

---

3. Plaintiffs' counsel maintained at oral argument that the test this court used in *Vezzetti* is a factual analysis, and is therefore an issue for the jury. We disagree. This argument confuses the idea of an *issue of fact* with that of a *fact-specific inquiry*. We believe the latter accurately characterizes the *Vezzetti* test.

4. We conclude the district court erred in submitting the issue to the jury. However, this procedural flaw should not detain us, since we review the court's judgment, which impliedly at least, upholds as a matter of law the jury's determination that the plaintiff employees were protected under the First and Fourteenth Amendments.

cials, and (8) is responsive to partisan politics and political leaders.

22 F.3d at 486.

Like the analysis under *Branti*, application of the *Vezzetti* factors suggests that Gordon, Thorsen, and Flick fall within the exception that the factors attempt to define. First, all three were exempt from civil service protection, which has been considered important by this circuit even before *Vezzetti*.[5] *See Regan*, 984 F.2d at 580 ("New York has considered many of the same criteria for non-civil service status as does a court in determining whether a position is exempt from First Amendment protection."). Second, they all have technical competence or expertise; each was a consultant to a specific policymaking board (Gordon to the Sewer Commission, Thorsen to the City Highway Department, and Flick to the Office of Community Development). The third factor, in contrast, weighs in their favor, as each was not in charge of a large group of employees. *See Vezzetti*, 22 F.3d at 486 (noting that the plaintiff there "managed about sixty employees and had broad authority to make hiring decisions"). The remaining factors, in our view, together encompass a principle upon which this circuit has placed primary importance: whether the employee in question is empowered to act and speak on behalf of a policymaker, especially an elected official. *See Regan*, 984 F.2d at 580 ("There is no likely circumstance in which a shared ideology is more important than when an elected official appoints a deputy who may act in his or her stead."). The plaintiffs here negotiated contracts and litigated on behalf of the County, represented the County in committees made up of elected officials, and were charged to represent the County at hearings or in court. These last four *Vezzetti* factors attempt to define the contours of a zone inside which governmental decisions are made. The plaintiffs' advice to and representation of top policymaking officials in the County place them inside this zone.

However, we emphasize that *Vezzetti* should not be mechanically applied, nor should it begin and end the analysis. *See Vezzetti*, 22 F.3d at 486 (noting that the factors are not "an exhaustive list of indicators, nor is any one factor or group of them always dispositive"). Equally helpful is an examination of this circuit's cases applying *Elrod–Branti* analysis, which reveals that we have held a wide variety of jobs to be exempt from First Amendment protection. *See, e.g., Vezzetti*, 22 F.3d at 486 (Highway Superintendent); *Regan*, 984 F.2d at 581 (Deputy Tax Receiver); *Savage*, 850 F.2d at 65 (Confidential Secretary to the Director of the County Correctional Facility); *id.* (Coordinator for Pre-Trial Release Services); id. (First Deputy Service Officer for the County Veterans Service Agency).

The employees exempt from First Amendment protection in *Savage, Regan* and *Vezzetti* all worked closely with and exercised independent judgment in advising policymakers and elected officials. *See Savage*, 850 F.2d at 69 (noting that the secretarial position exempted from protection involved "confidentiality, discretion in disseminating information to the public, and independent judgment regarding department policies and procedures"). Here, as noted above, each of the three plaintiffs served as a liaison and advisor to a policymaking commission. It is difficult to fathom how such responsibilities can be undertaken and done well without their "political or social philosophy [making] a difference in the implementation of programs." *Id.*

Also persuading us are other circuits' cases concluding that government attorneys in similar positions to those held by the plaintiffs do not fall under the *Elrod–Branti* umbrella. "All circuit court decisions—and almost all other court decisions—involving attorneys in government service, other than public defenders, have held that *Elrod/Branti* do not protect these positions." Susan Lorde Martin, *A Decade of Branti Decisions*, 39 Am.

---

5. This circuit does not, however, presume employees are exempt from First Amendment protection just because they are exempt from civil service protection. *But see Stott v. Haworth*, 916 F.2d 134, 142 (4th Cir.1990) (applying such a presumption). To presume one from the other, in our view, would be at odds with *Elrod*, where the plaintiffs were "non-civil-service employees." 427 U.S. at 351, 96 S.Ct. at 2679.

U.L.Rev. 11, 46–47 (1989);[6] *see also Williams*, 909 F.2d at 155 ("[C]ourts that have decided whether city and county attorneys are so protected have almost uniformly found that they are not.").[7]

In *Williams*, the Sixth Circuit held that a City Attorney was not entitled to First Amendment protection. 909 F.2d at 153–56. While the position of City Attorney is certainly distinguishable from the Assistant County Attorneys at issue here, the court in *Williams* explicitly noted that even if Williams's tasks were "largely ministerial," First Amendment protection still would not apply because "the City Attorney could be employed by the City to give legal advice, to act as the City's solicitor, handling its litigation, to represent City officials in litigation, and to perform some of the City's prosecutions." *Id.* at 154–55.

The plaintiffs argue that they only gave technical legal advice, and did not make policy. We find two fatal flaws in this argument. First, the Supreme Court in *Branti* made it clear that the focus of the argument should not be whether an individual's employment carries the "policymaker" label, but rather whether "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti*, 445 U.S. at 518, 100 S.Ct. at 1295. Therefore, the plaintiffs' consistent protests that they do not "make policy" are outweighed by the evidence that they can act in the stead of the County Attorney, performing all the tasks that the City Attorney could perform in

*Williams*. Second, their argument that they "only gave legal advice" was rejected by the Third Circuit in *Ness v. Marshall*, 660 F.2d 517, 521–23 (3d Cir.1981). There, the court held that the positions of City Solicitor and Assistant City Solicitor did not receive *Elrod–Branti* protection. *Id.* at 521. The court determined that despite the solicitors' argument that they performed only "purely technical legal work," the duties the solicitors *could* perform "rendering legal opinions, drafting ordinances, [and] negotiating contracts—define a position for which party affiliation is an appropriate requirement." *Id.* at 521–22. The *Williams* court echoed *Ness:* "The plaintiffs in *Ness* argued, unsuccessfully, that their jobs were politically neutral and essentially technical in nature; they merely gave legal advice when requested to do so. That argument did not succeed in *Ness* and it cannot prevail here." 909 F.2d at 155–56. Nor will it prevail here.

Our decision in *Regan* provides a compelling rationale for our ruling. The *Regan* court, emphasizing the importance of the plaintiff's ability to act on behalf of a policymaker, stated that "[e]lected officials are charged with carrying forth the mandate of the voting public, and in order to effectuate the policies promised the electorate, that official must be able to have trusted advisors and alternates who are directly accountable to that official." 984 F.2d at 580. Here, the County Attorney is not elected but rather appointed by the Legislature, which is itself elected. Gordon and Thorsen were both di-

---

**6.** In fact, Martin described an "employment spectrum," on which she places an employee who cleans the governor's mansion at one end (protected by *Elrod–Branti*) and "lawyers—other than assistant public defenders"—at the other (exempt from *Elrod–Branti* protection). *Id.* at 23. Cases holding government attorneys exempt from First Amendment protection against politically-motivated dismissal include *Williams*, 909 F.2d at 155; *Bauer*, 802 F.2d at 1063–64; *Livas v. Petka*, 711 F.2d 798; 800–01 (7th Cir.1983); *Newcomb v. Brennan*, 558 F.2d 825, 830–31 (7th Cir.1977); *see also Williams*, 909 F.2d at 155 (listing cases, including district court and state court cases).

**7.** Plaintiffs rely in part on three district court cases in this circuit. *Selkirk v. Boyle*, 738 F.Supp. 70 (E.D.N.Y.1990), *Tavano v. County of Niagara*, 621 F.Supp. 345 (W.D.N.Y.1985), *aff'd,*

800 F.2d 1128 (2d Cir.1986), and *Layden v. Costello*, 517 F.Supp. 860 (N.D.N.Y.1981), all found assistant county attorneys to be constitutionally protected under *Elrod* and *Branti*. Though *Tavano* was summarily affirmed by this court, the district court found that the employees there not only were not policymakers, but also were not terminated for political reasons. 621 F.Supp. at 350. Therefore, the district court's conclusion that the employees were entitled to First Amendment protection was not essential to its decision and carries no precedential weight. That we considered the district court's decision as turning on the factual question of whether the dismissals were politically motivated is made clear by the fact that we affirmed summarily. All three cases, aside from not controlling the outcome here, predate *Regan* and *Vezzetti*, which of course, are controlling on this court.

rectly positioned as alternates to the County Attorney position. In addition, all three plaintiffs advised the Legislature or Commissions set up by the Legislature or County Executive, both of which are elected. Finally, the Legislature, which has perhaps the best knowledge of the responsibilities involved in the positions it created, designated these positions both as "policymaking" [8] and as exempt from civil service status. It is, in our view, a fair conclusion that the Assistant County Attorneys here, because of the discretion with which they are charged, and because of their authority to act on behalf of the County, are politically accountable to the Legislature and the County Executive such that their loyalty helps ensure that the mandate of the electorate is effectively carried out.

We hold that the Assistant Rockland County Attorneys are, for the reasons set forth above, exempt from First Amendment protection against politically motivated dismissal. The judgment of the district court is therefore vacated. We remand with direction to enter judgment in favor of the defendant, the County of Rockland. Costs shall be assessed against the appellees.

Judgment REVERSED.

---

8. Section 66–9 of the Rockland County Code requires that the legislature annually designate, by resolution, persons who hold "policy-making positions" in the County. Those persons are then subject to the financial disclosure requirements of the Code. The Resolution adopted by the Legislature pursuant to this law included plaintiffs' positions on the list of policymakers.