**Richard C. WALLIKAS and Raymond D. Schaffer, Plaintiffs,**

v.

**David HARDER, Broome County Sheriff, in his individual and official capacities; County of Broome; and Gerald W. Kellar, Broome County Undersheriff, in his individual and official capacities; Defendants.**

No. 99–CV–1212.

United States District Court, N.D. New York.

Oct. 30, 2000.

Law Offices of Ronald Benjamin, Binghamton, NY, for Plaintiffs, Marya C. Young, of counsel.

Broome County Attorney's Office, Edwin L. Crawford County, Binghamton, NY, for Defendants, Robert G. Behnke, of counsel.

### Memorandum–Decision & Order

McAVOY, District Judge.

## I. BACKGROUND

### A. Procedural History

Plaintiffs Richard Wallikas and Raymond Schaffer commenced the instant litigation against Defendants David Harder, Broome County Sheriff, in his individual and official capacities, the County of Broome (the "County"), and Gerald W. Kellar, Broome County Undersheriff, in his individual and official capacities (collectively "Defendants"), asserting claims pursuant to 42 U.S.C. § 1983 for alleged violations of Plaintiffs' constitutional rights under the First and Fourteenth Amendments of the United States Constitution and pendant state law claims under the New York Constitution and N.Y. CIV. SERV. LAW § 75–b. On October 25, 1999, the Court dismissed the official-capacity claims against Defendants Harder and Kellar and the state-based claims brought pursuant to the New York State Constitution and N.Y. CIV. SERV. LAW § 75–b. *See Wallikas v. Harder,* 67 F.Supp.2d 82 (N.D.N.Y. Oct.25, 1999). Plaintiff then moved, by Order to Show Cause for a temporary restraining order and preliminary injunction. The Court denied this motion finding that the motion did not need to be heard on an expedited

basis. On November 4, 1999, Plaintiffs filed a motion for a preliminary injunction, which the Court denied after finding that Plaintiff had not established irreparable harm. *See Wallikas v. Harder,* 78 F.Supp.2d 36 (N.D.N.Y.1999). On August 14, 2000, the Court granted Defendants' motion for summary judgment in part and dismissed Schaffer's claims and Wallikas's Freedom of Association claim. *See Wallikas v. Harder,* 99–CV–1212, Bench Decision (N.D.N.Y. Aug. 14, 2000). The Court denied Defendants' motion for summary judgment on Wallikas's claim that Defendants altered the terms and conditions of his employment in retaliation for his participation in the election for the Broome County Sheriff's position. Familiarity with the above decisions is assumed and, for the purposes of this motion, the Court will iterate the relevant facts in the ensuing discussion.

## II. DISCUSSION

Presently before the Court is Defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56 seeking to dismiss the Complaint in its entirety on the grounds that Wallikas is a "policymaker" exempt from First Amendment protection against employment decision based on political patronage,[1] *see Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and Plaintiff's cross-motion for sanctions pursuant to FED. R. CIV. P. 11 and attorneys' fees.[2]

### A. Summary Judgment

In addressing the instant motion, the Court will apply the familiar standard for summary judgment, which need not be restated here. *See Roman v. Cornell Univ.,* 53 F.Supp.2d 223, 232–33 (N.D.N.Y. 1999); *Phipps v. New York State Dep't of Labor,* 53 F.Supp.2d 551 (N.D.N.Y.1999); *Riley v. Town of Bethlehem,* 44 F.Supp.2d 451, 458 (N.D.N.Y.1999).

██ Public employees are generally protected from discharge for exercising their First Amendment rights, however, "political affiliation is a valid employment criterion for jobs held by 'policymaking' or 'confidential' employees." *Butler v. New York State Dep't of Law,* 211 F.3d 739, 743 (2d Cir.2000) (citing *Branti,* 445 U.S. at 517, 100 S.Ct. 1287; *Elrod,* 427 U.S. at 372–73, 96 S.Ct. 2673). The ultimate inquiry in determining whether an employee is a policymaker "is not whether the label 'policymaker' ... fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518, 100 S.Ct. 1287. The Second Circuit has interpreted *Branti* to stand for the proposition that "political affiliation is an appropriate [job] requirement when there is a rational connection between shared ideology and job performance." *Bavaro v. Pataki,* 130 F.3d 46, 50 (2d Cir.1997) (quoting *Savage v. Gorski,* 850 F.2d 64, 68 (2d Cir.1988)), *cert. denied,* 523 U.S. 1120, 118 S.Ct. 1801, 140 L.Ed.2d 941 (1998). In determining

---

1. Defendants asserted that Wallikas's claim was precluded because he is a policymaker in their prior summary judgment motion's reply papers. Because this argument was not asserted in Defendants' moving papers and, thus, Plaintiff did not have a chance to oppose the argument, the Court did not consider this point. However, the Court extended the motion filing deadline until October 6, 2000 so that Defendants could file an additional summary judgment motion limited to this issue. *See Wallikas v. Harder,* 99–CV–1212, Bench Decision (N.D.N.Y. Aug. 14, 2000).

2. Plaintiff's counsel submitted reply papers to Defendants' opposition to the cross-motion as well as in further opposition to Defendants' motion. The Local Rules clearly state that reply papers are only permitted in motions falling under Rule 7.1(b)(1). Motions for attorneys' fees and sanctions are properly made pursuant to Rule 7.1(b)(2), for which parties must get leave of the Court to file reply papers. Because Plaintiff's counsel did not obtain leave of Court, the Court did not consider the reply papers. *See* N.D.N.Y.L.R. 7.1(b)(1) and (b)(2).

whether an employee is a policymaker, courts must look at "the inherent duties of the job," or the job's description, rather than an individual's job performance. *Id.* (citations omitted).

A number of factors are relevant to the determination of whether there exists a rational connection between political affiliation and the inherent duties of a position. These factors include whether the employee: (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, (4) is authorized to speak in the name of policymakers, (5) is perceived as a policymaker by the public, (6) influences government programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders. *See Vezzetti v. Pellegrini,* 22 F.3d 483, 486 (2d Cir.1994); *Regan v. Boogertman,* 984 F.2d 577, 580 (2d Cir.1993). Court's are not limited to consideration of these factors, and no single factor is dispositive. *See Vezzetti,* 22 F.3d at 486; *see also Bavaro,* 130 F.3d at 50 ("These factors should not be mechanically applied, nor should [they] begin and end the analysis") (citations omitted). In fact, the Second Circuit has "recognized that a high salary is 'a common characteristic of policymaking positions.'" *Adler v. Pataki,* 185 F.3d 35, 46 (2d Cir.1999) (quoting *Savage,* 850 F.2d at 68). The final four factors of the *Vezzetti* analysis can be condensed to one question, of primary importance: "whether the employee in question is empowered to act and speak on behalf of a policymaker, especially an elected offi-

cial." *Gordon v. Rockland,* 110 F.3d 886, 890 (2d Cir.), *cert. denied,* 522 U.S. 820, 118 S.Ct. 74, 139 L.Ed.2d 34 (1997); *Bavaro,* 130 F.3d at 50; *see also Butler,* 211 F.3d at 744.

■ Plaintiff argues that the present motion for summary judgment is frivolous, such that the Court should award attorneys' fees and impose Rule 11 sanctions, because Plaintiff's employment position is a civil service position and, thus, he is entitled to protection under New York's Civil Service Law. *See, e.g.,* N.Y. CIVIL SERVICE LAW § 107.[3] The law in this Circuit, however, clearly holds that although a court should grant "substantial deference" to New York's classification of a job, that classification is not dispositive in the policymaker analysis. *See Vezzetti,* 22 F.3d at 486 (noting that none of the factors listed were dispositive); *see also Gordon,* 110 F.3d at 890 n. 5 ("This circuit does not, however, presume employees are exempt from First Amendment protection just because they are exempt from civil service protection. To presume one from the other, in our view, would be at odds with *Elrod,* where the plaintiffs were 'non-civil service employees.'") (citations omitted); *Regan,* 984 F.2d at 580 ("[I]t would not satisfy *Branti* to categorize positions for political dismissal exception purposes solely on a civil service/non-civil service basis. There must be an independent factual analysis of several factors to determine whether the position falls within the political dismissal exception contemplated

**3.** N.Y. CIVIL SERVICE LAW § 107 provides in pertinent part:

1. Recommendations based on political affiliations. No recommendation or question under the authority of this chapter shall relate to the political opinions or affiliations of any person whatever; and no appointment or selection to or removal from an office or employment within the scope of this chapter or the rules established thereunder, shall be in any manner affected or influenced by such opinions or affiliations. No person in the civil service of the state or of any civil division thereof is for that reason under any obligation to contribute to any political fund or to

render any political service, and no person shall be removed or otherwise prejudiced for refusing so to do. No person in the said civil service shall discharge or promote or reduce, or in any manner change the official rank or compensation of any other person in said service, or promise or threaten so to do, for giving or withholding or neglecting to make any contribution of money or service or any other valuable thing for any political purpose. No person in said service shall use his official authority or influences to coerce the political action of any person or body or to interfere with any election.

in *Branti*. Whether a position comes under civil service protection is only one such factor."); *Savage*, 850 F.2d at 69 (finding that because "determining whether it makes sense to exempt appellees' positions from First Amendment protection involves many of the same factors that New York State already has considered in exempting these public employment positions from its constitutionally-mandated civil service system," the court should grant "substantial deference" to this determination); *Savitt v. Vacco*, 1998 WL 690939, at *4 (N.D.N.Y. Sept.28, 1998) (Pooler, J.) ("A substantial body of pre-existing Second Circuit case law holds that civil service classification is an important, albeit not conclusive factor in determining whether there is a rational connection between shared ideology and job performance.") (citations omitted); *Vona v. County of Niagara*, 1995 WL 222049, at *6 (W.D.N.Y. March 31, 1995), *aff'd*, 119 F.3d 201 (2d Cir.1997); *Rini v. Zwirn*, 886 F.Supp. 270, 302 (E.D.N.Y. 1995) (holding that civil service status is not dispositive of policymaker issue). Accordingly, the fact that Wallikas worked in a civil service position is not dispositive. *See, e.g., Bavaro*, ("Even though we found that it was possible that [the *Vona* plaintiffs] enjoyed civil service protection, we held that they did not enjoy First Amendment protection against patronage dismissal."); *Vona v. County of Niagara New York*, 119 F.3d 201, 209 (2d Cir.1997) (finding employees exempt from First Amendment protection where record was unclear on civil service status). The Court will, however, grant substantial deference to Plaintiff's civil service status.

The second *Vezzetti* factor, whether Plaintiff has some technical competence or expertise, weighs in favor of Defendants. The record shows that Plaintiff was involved with the departments computer programs, *see, e.g.*, Behnke Aff. Ex. D (Plaintiff's Response to Interrogatories [hereinafter Interrogatory Response] ), Interrogatory No. 1, Answer (d), Interrogatory No. 8, Answer (b), and the job description for Deputy Sheriff Captain suggests that technical competence or expertise in the areas of, *inter alia*, law enforcement, equipment, and criminal law, were necessary to the job. *See* Behnke Aff., Ex. E; *see also Bavaro*, 130 F.3d at 50 (finding that "successful prosecution of professional misconduct charges" requires the necessary technical competence and expertise).

It is clear that the third *Vezzetti* factor, whether Wallikas "control[led] others," also weighs in Defendants favor. Both Wallikas's official job description, *see* Behnke Aff. Ex. E, and the job description given by Wallikas and former Sheriff DeAngelo indicate Plaintiff's position involved significant control over numerous subordinate staff members.[4] *See* Behnke Reply Aff., Ex. O at ¶¶ 10, 15, 16, 21, 22, 23 (DeAngelo Aff.); Behnke Reply Aff., Ex. P (Promotional Examination for Deputy Sheriff Captain[5]); Behnke Aff. Exs. K, L, M (copies of annual reports listing number of employees in Detective Division and Highway Patrol Division); Milks Aff. ¶ 4; Crump Aff. ¶ 4; Behnke Aff. Ex. D (Plaintiff's Response to Interrogatories [hereinafter Interrogatory Response] ), Interrogatory No. 6, Answer 1(d); Interrogatory No. 9, Answer; Behnke Aff., Ex. F. (memoranda from Captain Wallikas).

---

4. The fact that Plaintiff did not have the complete decision making authority to hire or fire, transfer, reassign duties, etc., *see* Wallikas Aff. ¶¶ 10, 12, does not alter the finding that Plaintiff had "control" over others. *See, e.g., Butler*, 211 F.3d at 744 (finding that the fact that Plaintiff had to consult a supervisor or client on policy decisions did not mean she was not a policymaker).

5. This examination lists the duties of a Deputy Sheriff Captain as follows: "The work involves responsibility for supervising the operation of various divisions and units of Deputy Sheriffs. The work is performed under general supervision with considerable leeway allowed for the use of independent judgment in planning the details of the work. Supervision is exercised over the work of subordinates."

As discussed above, analysis of the final four *Vezzetti* factors focuses on "whether the employee in question is empowered to act and speak on behalf of a policymaker, especially an elected official." *Gordon*, 110 F.3d at 890. In this case, it is clear that Wallikas did in fact speak on behalf of Sheriff DeAngelo and the Sheriff's Department. In answers to interrogatories in this action and in his deposition, Wallikas stated that he, *inter alia*, "maintained extensive community outreach, education and communication with the County" and "acted as a liaison for the Sheriff's Department to Broome County Emergency Services." Interrogatory Response, No. 1, Answer (d). With respect to his involvement in computer services, Wallikas organized a meeting of all the local law enforcement agencies and "presented a proposal to seek funding to install computers in every agency police vehicle and establish a countywide integrated communications network." *Id.*, Interrogatory No. 8, Answer (b). This and other computer projects required Wallikas to work with representatives in the private sector, other law enforcement agencies, and the Broome County Office of Emergency Services. Additionally, Plaintiff met with the Deputy County Executive and other officials to discuss his proposals for new technological programs. *See id.*

Wallikas also worked with the Binghamton Ranger Hockey Team to organize a police program for kids and worked to educate community parents and senior citizens in retirement homes within the county regarding safety issues. *See id.*, Interrogatory 8, Answer (c).

Wallikas worked with the Broome County Communications Center and was a member of a "Law Enforcement Advisory Board" which consisted of representatives from five local police agencies. The group was working toward a "concept of a consol-idated emergency dispatch center" and "Wallikas continued to work as the B.C.S.O. liaison until" he was removed by Defendants in January 1999. In this position, Plaintiff, among other things, participated in interviews of all new communications dispatchers, "worked closely with the Senior dispatcher on law enforcement and communications policies[, was involved in] the implementation of many aspects of the Law Enforcement Communications Procedures," and "worked closely with the emergency services Division in the planning, implementation and upgrading" of the law enforcement computer operations, and worked to obtain necessary licenses. Interrogatory Response, Interrogatory No. 8, Answer (d).

Under Sheriff DeAngelo's administration, Wallikas was a member of the Executive Review Board, prepared a budget for the departments under his supervision, implemented that budget, applied for state grant funding for various programs, and attended various meetings on behalf of Sheriff DeAngelo.

Despite Wallikas's participation in the activities discussed above, his job description does not include many of the activities Wallikas undisputedly performed.[6] Instead, the job description includes a range of supervisory activities. In contrast to the job description for "Deputy Sheriff Lieutenant," *see* Young Aff. Ex. 2, Wallikas's job description does not include representing "the department at meetings, hearing or public gatherings" or "giving information to the public regarding departmental policy or standards." The Second Circuit has explicitly held that the *Vezzetti* analysis focuses on "the *duties inherent* in the offices held by the plaintiffs"—those represented in the job description—rather than the duties actually performed. *See Gordon*, 110 F.3d at 889; *see also Bavaro*, 130 F.3d at 50; *Butler*, 211 F.3d at 744

---

**6.** Wallikas's testimony and interrogatories suggest that he did speak on behalf of Sheriff DeAngelo, was perceived as a policymaker by the public, had substantial influence on gov-ernment programs (i.e., mobile computers, Kids on Edge, Operation Plaza Watch), and had contact with elected officials.

("The issue is not whether Butler independently made policy day to day, but rather what the general required duties of her position were."); *Danahy v. Buscaglia,* 134 F.3d 1185, 1191 (2d Cir.1998) ("[I]n *Gordon* this Court explained that such inquiry presents a question of law informed solely by the job description and the powers of office. . . .") (internal citation omitted); *Regan,* 984 F.2d at 580 ("[W]e do not merely look at her actions taken while in office. Rather, we also look at the power with which she is vested by law, and which is inherent in the office.") (citations omitted). In light of this authority, the Court cannot conclude, absent any indicia in Wallikas's job description of authority characterized as policymaking by the *Elrod* and *Branti* line of cases and in the absence of evidence (such as descriptions of activities engaged in by past and current Deputy Sheriff Captains) that the policymaking activities Wallikas engaged in were inherent in the job of Deputy Sheriff Captain, that this factor weighs in favor of Defendants. Thus, taking all inferences in favor of Wallikas as required on a summary judgment motion and, thus assuming that Wallikas's job activities were anomalous and that appearances on behalf of the Sheriff, creation of law enforcement programs and initiatives, meetings with public officials and representatives of similarly situated agencies, etc., are not inherent in the job of Deputy Sheriff Captain, the Court finds for the purposes of this motion that the final factors in the *Vezzetti* analysis weigh in Plaintiff's favor.

Finally, the facts indicate that Wallikas's salary was one of the highest in the Department. This factor weighs in favor of Defendants.

■ A balancing of the factors discussed above, indicates that Defendants are not entitled to summary judgment on the policymaker defense. Should Defendants adduce factual evidence at trial that proves that policymaking activities are necessary to the position of Deputy Sheriff Captain the Court may find, as a matter of law, that Wallikas is exempt from the First Amendment's protection against political patronage. Conversely, if Defendants fail to produce such evidence, or Plaintiff produces evidence indicating that such activities are not inherent to the position of Deputy Sheriff Captain, the Court may find as a matter of law that Wallikas is not a policymaker.

**B. Rule 11 Sanctions, Attorneys' Fees**

■ Plaintiff cross-moves for Rule 11 sanctions and attorneys' fees arguing that Defendants' motion for summary judgment was frivolous insofar as Plaintiff's status as a civil service employee precluded a finding that he was a policymaker exempt from certain First Amendment protections. This motion was procedural improper, *see* FED. R. CIV. P. 11, and, as discussed above, the clearly established law in this Circuit is that the civil service status of an employee is one of many factors to weigh in determining whether an employee is a policymaker. Although Courts grant state law's classification of certain employees "substantial deference" that classification is not dispositive. Accordingly, the Court finds that Defendants' summary judgment motion was not frivolous and denies Plaintiff's motion for Rule 11 sanctions and attorneys' fees.

**III. CONCLUSION**

Defendants' motion for summary judgment is DENIED; Plaintiff's cross-motion for Rule 11 sanctions and attorneys' fees is DENIED. The Clerk of the Court is ordered to strike Plaintiff's reply papers, dkt. Nos. 79 and 80, from the record and return them to Plaintiff's counsel as they were filed without leave of the Court.

**IT IS SO ORDERED.**