Amy **SCHALLOP**, Plaintiff,

v.

**NEW YORK STATE DEPARTMENT OF LAW; Dennis C. Vacco; Donald P. Berens; Tricia Troy Alden; William M. Flynn; John Doe; and Jane Roe, All Individually and in their Official Capacities, Defendants.**

No. 96–CV–1059(DRH).

United States District Court,
N.D. New York.

Sept. 14, 1998.

Gleason, Dunn, Walsh & O'Shea, Albany, NY (Mark T. Walsh, of counsel), for Plaintiff.

Snitow & Pauley, New York City (Franklyn H. Snitow, Charles D. Cunningham, of counsel), for Defendants.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

Plaintiff Amy Schallop ("Schallop"), a former New York State Assistant Attorney General ("AAG"), brought this action against the New York State Department of Law ("DoL") and certain of its officials alleging that her employment was wrongfully terminated in violation of her First Amendment right to free speech and on the basis of her gender.[1] Schallop seeks monetary damages and injunctive relief in the form of reinstatement to her position. Presently pending is defendants' motion for summary judgment on all claims pursuant to Fed.R.Civ.P. 56. Docket No. 61. Also pending is Schallop's cross-motion for partial summary judgment against defendant William M. Flynn. Docket No. 65. For the reasons which follow, defendants' motion is granted in part and denied in part, and Schallop's cross-motion is denied.

### I. Background

The DoL is headed by the Attorney General. N.Y. Const. art. V., § 4; N.Y.Exec.Law § 60. The Attorney General is vested with a full range of authority and responsibilities beginning with the duty to prosecute and defend all legal actions in which New York has an interest. *See* N.Y.Exec.Law § 63. The Attorney General is empowered to appoint AAGs to assist him in the performance of his duties. *Id.* at § 62. In November 1994, defendant Dennis C. Vacco ("Vacco")

---

1. Schallop's amended complaint also alleged that she was terminated in violation of her First Amendment right to free association on the basis of her political affiliation. That claim and a state law claim for intentional infliction of emotional distress have now been withdrawn. Docket No. 72.

was elected Attorney General. Snitow Decl. (Docket No. 61), ¶ 7. When he assumed office on January 1, 1995, Vacco became the first Republican to serve as Attorney General in fifteen years. *Id.*

Defendant Donald P. Berens ("Berens") is the Deputy Attorney General for the DoI's Division of State Counsel. Berens Decl. (Docket No. 61), ¶ 1. Defendant William M. Flynn ("Flynn") is the First Deputy Attorney General. Flynn Reply Decl. (Docket No. 74), ¶ 1. Defendant Tricia Troy Alden ("Alden") is the AAG in charge of Legal Personnel Recruitment and Staff Development. Berens Decl., ¶¶ 33–34.[2] Schallop was appointed as an AAG by then Attorney General Robert Abrams on February 23, 1990. She began work in the DoI's Albany Litigation Bureau effective March 12, 1990. Cunningham Decl. (Docket No. 63), Ex. C.

After taking office, Vacco commenced a complete review of the DoI's professional staff. He invited those interested in retaining their employment to reapply for their positions. Berens Decl., ¶ 31. Those interested in continuing their employment were told to submit to Flynn a resume and a brief outline of their current responsibilities. *Id.* at ¶ 32. Berens, Flynn, and Alden, among others, comprised an informal "Vacancy Committee" which managed the evaluation process. *Id.* at ¶¶ 33 & 40. Once applications were received, interviews were generally conducted by a panel of Vacancy Committee members. Interview evaluations were memorialized for some but not all applicants on Legal Recruitment Evaluation ("LRE") forms. *See* Cunningham Decl., Ex. M. Vacco delegated to Flynn the authority to make reappointment decisions. Flynn Dep. (Docket No. 69), pp. 54–57.

Schallop had taken a maternity leave in December 1994 and was scheduled to return to work in June 1995. Cunningham Decl., Ex. O. Her leave was later extended to August 1995.[3] *Id.* at Ex. P. In January 1995, upon learning of Vacco's reapplication process, Schallop submitted to Flynn a letter

stating her desire for reappointment, a resume and a statement of her duties at DoL. *Id.* at Ex. K. Schallop was interviewed for reappointment on June 28, 1995. Berens Decl., ¶ . 50. The panel which conducted the interview consisted of Berens, Alden and AAGs Lisa B. Elovich and Susan Marie Tatro. *Id.* Each interviewer completed an LRE form for Schallop. Berens and Alden recommended that Schallop be reappointed while Tatro and Elovich were undecided. Cunningham Decl., Ex. Q.

In late August 1995, as a result of the reappointment process, the employment of six AAGs from Schallop's office was terminated. Am.Compl., ¶ 30; Answer to Am. Compl., ¶ 14. In an August 29, 1995 newspaper article, a DoL spokesperson responding to charges that the AAGs were fired for political reasons stated that the qualifications of the fired employees was "not up to the level we expect. We can't afford to have dead wood on board." Cunningham Dec., Ex. BB. In response to that article, Schallop contacted a reporter to discuss the recent firings. Schallop Dep. (Cunningham Decl., Ex. F.), pp. 41–44. In a newspaper article published September 1, 1995, Schallop was quoted as follows: "[T]he quality of the people who were fired was outstanding, and anyone who knows anything about their work couldn't possibly say otherwise." Cunningham Decl., Ex. EE.

Schallop thereafter inquired on several occasions whether a decision had been made on her reappointment. She eventually sent a letter dated December 11, 1995, to Tatro requesting a "definitive answer." *Id.* at Ex. W. Finally, in a letter from Salvatore Page dated December 27, 1995, Schallop was informed that her employment was terminated effective January 10, 1996. *Id.* at Ex. D. This action followed.

## II. Discussion

In her amended complaint Schallop asserts seven causes of action. The first two assert violations of her free speech rights under the

---

2. Schallop also named Susan Marie Tatro and Salvatore W. Page as defendants, but has now withdrawn all claims against them. Docket No. 76.

3. Before commencing her maternity leave and after returning to work in August 1995, Schallop worked on a part-time (80%) schedule.

First Amendment and 42 U.S.C. § 1983. The third and seventh have been dismissed. *See* note 1 *supra.* The fourth, fifth and sixth causes of action assert gender discrimination respectively in violation of Title VII, 42 U.S.C. § 2000e *et seq.;* the Equal Protection Clause and section 1983; and the New York Human Rights Law, N.Y.Exec.Law § 290 *et seq.* (McKinney 1993 & Supp.1998).

### A. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact . . . the moving party is entitled to judgment as a matter of law, . . . where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *FDIC v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994); *see also Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). Once the movant has come forward with sufficient evidence in support of the motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994).

The trial court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *American Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994); *see also Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985). "Furthermore, the non-movant 'will have his allegations taken as true, and will receive the benefit of the doubt when his assertions conflict with those of the movant.'" *Samuels v. Mockry,* 77 F.3d 34, 36 (2d Cir.1996) (citations omitted). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the require-

ment is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Eleventh Amendment Immunity

Schallop's claims here include those under section 1983 in her first, second and fifth causes of action against the DoL and against the other defendants in their official capacities. As a threshold matter, the defendants assert that those claims are barred by the Eleventh Amendment. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.[4] Rather than an absolute bar to federal court jurisdiction, the Eleventh Amendment establishes a sovereign immunity from suit which may only be waived by a state or abrogated by Congress. *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438 (1997). It is well settled that Congress did not abrogate the immunity provision in adopting section 1983, *Quern v. Jordan,* 440 U.S. 332, 340–42, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and there is no contention here that New York has waived its immunity by consenting to be sued in these circumstances.

Claims brought against state agencies, like those against the DoL here, constitute direct claims against the state and are barred by the Eleventh Amendment. *Komlosi v. New York State Office of Mental Retardation & Developmental Disabilities,* 64 F.3d 810, 815 (2d Cir.1995); *see also Seminole Tribe,* 517 U.S. at 58, 116 S.Ct. 1114 ("the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment."). Claims for damages brought against state employees in their official capacities are likewise construed as claims against the state and fall to the same Elev-

---

**4.** The Eleventh Amendment bars suits against a state by its own residents as well as by those of other states. *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

enth Amendment bar. *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Thus, the section 1983 claims in the first, second and fifth causes of action against the DoL must be dismissed as barred by the Eleventh Amendment. The damages claims asserted in those causes of action against the other defendants in their official capacities must also be dismissed on the ground of Eleventh Amendment immunity.[5]

◼ Schallop's official capacity claims in the first, second and fifth causes of action seeking the prospective injunctive relief of reinstatement, however, are governed by a different standard. Official capacity suits "generally represent only another way of pleading an action against an entity of which [a state actor] is an agent." *Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). An important exception to this general rule provides that suits challenging the constitutionality of a state official's action which seek an injunctive remedy are not considered claims against the state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).[6] These claims, therefore, are not barred by the Eleventh Amendment. *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 595 (2d Cir.1990); *TM Park Ave. Assocs. v. Pataki*, 986 F.Supp. 96, 106–07 (N.D.N.Y.1997) (McAvoy, C.J.).

This exception only applies in circumstances where the state official has the authority to perform the required act. The required act here is the reinstatement of Schallop to her former position. As Attorney General, Vacco possesses such authority.

See N.Y.Exec.Law § 62. It also appears that Flynn has been delegated the authority to reinstate Schallop. *See* Vacco Dep. (Docket No. 63, Ex. II), p. 44 (authority delegated in August 1995); Flynn Dep., p. 54 (authority not delegated until 1996). There is no evidence that either Berens or Alden possessed the authority to reinstate Schallop even were she to prevail at trial. Therefore, the reinstatement claims must be dismissed as to those defendants. *Klein v. University of Kan. Med. Ctr.*, 975 F.Supp. 1408, 1417 (D.Kan.1997).

◼ Finally, as to Schallop's claim against the DoL under the New York Human Rights Act in the sixth cause of action, nothing in that statute provides for a waiver of the state's Eleventh Amendment immunity. *Mete v. New York State Office of Mental Retardation & Developmental Disabilities*, 984 F.Supp. 125, 134 (N.D.N.Y.1997) (McCurn, J.); *Pazamickas v. New York State Office of Mental Retardation & Development Disabilities*, 963 F.Supp. 190, 196–97 (N.D.N.Y.1997) (McAvoy, C.J.). That cause of action must be dismissed as to the DoL and the other defendants in their official capacities because the *Ex parte Young* exception is unavailable when the alleged violation is one of state law. *Chinn v. City Univ. of New York Sch. of Law at Queens College*, 963 F.Supp. 218, 227 (E.D.N.Y.1997) (citing *Pennhurst*, 465 U.S. at 106, 104 S.Ct. 900).

Accordingly, defendants' motion is granted on this ground as to Schallop's first, second and fifth causes of action against the DoL, defendants Berens and Alden in all respects in their official capacities, and defendants Vacco and Flynn in their official capacities

---

5. The claims against the DoL and the official capacity damages claims are also subject to dismissal under the statutory construction given to section 1983 by the Supreme Court. As noted, these claims are viewed as claims against the state itself and a state is not a "person" subject to suit within the meaning of section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *see also Hilton v. South Carolina Pub. Rys. Comm'n*, 502 U.S. 197, 205, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) (*Will* was a construction of section 1983, not the Eleventh Amendment).

6. The rationale for this distinction is found in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The *Ex parte Young* doctrine permits suits for prospective injunctive relief against state officers alleged to have acted in violation of federal law. The state official may be liable even when the state is otherwise immune from suit. *Coeur d'Alene Tribe*, 117 S.Ct. at 2043 (O'Connor, J., concurring); *id.* at 2048 (Souter, J., dissenting). The doctrine is based on the premise that a state officer's violation of federal law strips his or her state action of its official character and, therefore, that violation should not be shielded by the state's immunity. *Id.* at 2043 (opinion of Justice O'Connor).

for damages. Defendants' motion on this ground as to those three causes of action is denied as to Schallop's claim for reinstatement against Vacco and Flynn in their official capacities. Defendants' motion on this ground as to the sixth cause of action is granted as to the DoL and as to all the other defendants in their official capacities.

## C. Free Speech Claim

In her first two causes of action, Schallop alleges that defendants infringed her right to freedom of speech under the First Amendment and retaliated against her for the exercise of that right in violation of section 1983. Am.Compl., ¶¶ 49–58.

### 1. Personal Involvement

■ Defendants contend first that Schallop has failed to demonstrate the personal involvement of Vacco, Berens or Alden in the alleged violations.[7] Personal involvement constitutes an essential prerequisite for section 1983 liability. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994).[8] A party may be personally involved for purposes of section 1983 in several ways. First, of course, a party may have directly participated in the alleged constitutional deprivation. Absent such direct involvement, supervisory personnel will be considered personally involved if they failed to remedy a wrong after learning of the violation. Supervisors also may be liable if they created the policy or custom under which unconstitutional practices occurred or failed to end such a policy or custom if already in existence. Finally, supervisors may be liable if they were grossly negligent in managing subordinates who committed the constitutional violation. *Id.* A section 1983 defendant, however, cannot be liable "merely because he held a high position of authority." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). Personal involvement is a question of fact. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986).

■ The parties contest what the record demonstrates concerning Vacco's personal involvement. Viewed in the light most favor-

able to Schallop, the record establishes that as Attorney General, Vacco possessed the authority to hire or fire Schallop, he undertook the reevaluation of the DoL's professional staff and he established a procedure by which-this evaluation was to occur. These facts suffice to create a triable question as to Vacco's personal involvement. Summary judgment for Vacco on this ground must be denied.

■ Berens and Alden were personally involved in the reappointment process. The question here, however, is whether they were personally involved in the decision to terminate Schallop's employment. As to Berens and Alden, Schallop points first to a statement by Flynn during his deposition. During his deposition, Flynn was referred to a paragraph of the answer to the amended complaint which asserts as a defense that Schallop's injuries were caused by others. Cunningham Decl., Ex. B, ¶ 34. When asked the identities of those individuals, Flynn stated they were the other defendants in this action. Flynn Dep., pp. 490–91. Even viewed in the light most favorable to Schallop, that answer falls short of establishing the personal involvement of Berens or Alden in the termination decision.

Schallop cites several other sources in the record to support her claim of Berens' personal involvement. These portions of the record establish that Berens participated in general discussions concerning Schallop's employment. Berens Decl. (Pl.'s Exs. Vol. I (Docket No. 70), Ex. D), pp. 204–05; Flynn Dep., pp. 373–75. None of these portions of the record, however, demonstrate what is necessary to establish Berens' liability under section 1983—his personal involvement in the actual decision to terminate Schallop's employment. Viewed in the light most favorable to Schallop, the record here establishes only that Berens participated in discussions leading to the decision on Schallop's employment. Without more, this fails to establish personal involvement under section 1983.

---

7. Flynn's personal involvement is uncontested.

8. The personal involvement question is the same for Schallop's free speech claims and for the

Equal Protection Clause claim in the sixth cause of action. Therefore, those claims are considered together for purposes of this issue.

Schallop asserts a second basis for Alden's personal involvement. In her deposition Alden stated that she received notice of a decision concerning Schallop in October or November, 1995. Alden Dep. (Pl.'s Exs. Vol. I (Docket No. 70), Ex. G), pp. 66–70. However, none of Alden's testimony indicates her personal involvement in the decision. In fact, her testimony indicates that she was being informed of a decision that had been made without her involvement. *Id.* at p. 67 ("Mr. Flynn was telling me to advise Don Berens that the decision had been made"). Taken in the light most favorable to Schallop, this testimony raises no question of fact concerning Alden's involvement in the actual decision to terminate Schallop's employment.[9]

Absent evidence of the personal involvement of Berens and Alden, neither can be liable under section 1983. Each, therefore, is entitled to summary judgment on this ground in his or her individual capacity on the first, second and fifth causes of action.

**2. Merits of First Amendment Claims**

Defendants next contend that they are entitled to summary judgment on the first two causes of action because the speech at issue here was not protected by the First Amendment and, even if it was, Schallop's public comment was not the reason for the termination of her employment. In addition, Schallop contends that she is entitled to partial summary judgment against Flynn on the ground that his decision to terminate her employment was impermissibly motivated by her constitutionally protected speech.

 The rights protected by the First Amendment are not surrendered as a condition of government employment. *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 717, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996); *Luck v. Mazzone*, 52 F.3d 475, 476 (2d Cir.1995). The government, however, maintains a greater interest in regulating the speech of its employees than it does for the citizenry at large. *Board of County Comm'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 675–76, 116 S.Ct. 2342,

135 L.Ed.2d 843 (1996) (differences exist for regulating speech between government as sovereign and government as employer). Nevertheless, the First Amendment protects government employees from adverse employment action because of their speech on matters of public concern. *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). To prevail on her claim, then, Schallop must show first that the speech in question related to a matter of public rather than private concern. *Connick*, 461 U.S. at 146, 103 S.Ct. 1684. Second, Schallop must show that her speech was a substantial or motivating factor in the termination of her employment. *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1058 (2d Cir.1993).

**a. Public Concern**

 Whether speech is a matter of public or private concern is a question of law. *Luck*, 52 F.3d at 476. In order to make that determination, the record must be taken as a whole and the content, form and context of the speech examined. *Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684. The Second Circuit has cautioned that speech merely touching on a matter of public concern is not protected when the speaker's motive is personal or private. *Blum v. Schlegel*, 18 F.3d 1005, 1012 (2d Cir.1994). Defendants contend that Schallop's speech was motivated by a desire to defend her fired colleagues, was thus a matter of private concern and, therefore, was not constitutionally protected. The central inquiry is the "primary aim" of the speech. *Ezekwo v. New York City Health & Hospitals Corp.*, 940 F.2d 775, 781 (2d Cir.1991); *Alexander v. Karosi*, No. 3:95–CV–2469, 1996 WL 684387, at *4 (D.Conn. Aug.12, 1996). Such an inquiry necessarily focuses on the facts of each case.

 Schallop testified that her comment was "offering my opinion about their skills as lawyers and their contribution to our office." Schallop Dep., p. 62. Viewed in the light most favorable to Schallop, she sought to make a public comment about the quality of

9. Following Schallop's interview with the Vacancy Committee on June 28, 1995, both Berens and Alden had recommended that Schallop's employment be continued. Cunningham Decl., Ex. Q.

certain government lawyers and their value to the DoL. The content of her comments focused on the competence and professionalism of AAGs. The comment was made in the context of a news report concerning the competence and method of selection of those public employees. *See Grossman v. Schwarz*, 678 F.Supp. 440, 442 (S.D.N.Y. 1988) (method for selecting attorneys for New York City's Department of Law was a matter of public concern).

■ Defendants contend that because Schallop was personally acquainted with the AAGs who had been fired, her comment represented a private rather than a public concern. That Schallop's comments may have drawn on knowledge gleaned from her personal relationship with the terminated AAGs does not strip her comments of constitutional protection, however. *See Waters v. Churchill*, 511 U.S. 661, 674, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (O'Connor, J., plurality opinion) ("[g]overnment employees are often in the best position to know what ails the agencies for which they work; public debate may gain much from their informed opinions").

Defendants also contend that Schallop's motive in speaking out was solely to vindicate her colleagues in the same forum in which their competence had been impugned. However, neither the article to which Schallop was responding nor Schallop's comment identified the most recently fired AAGs by name. Thus, Schallop's comment appeared as one directed to the merits of the firings generally rather than as a vindication of any particular AAG. Her comment, therefore, addressed the heart of a matter of public concern—the quality of the public's servants.

While this element presents a question of law, its resolution depends on findings of contested material facts, including the credibility of Schallop's testimony. The existence of these issues of fact suffices to defeat defendants' motion on this ground.

**b. Substantial or Motivating Factor**

■ Whether protected speech was a substantial or motivating factor in the termination of Schallop's employment presents a question of fact. *Frank v. Relin*, 1 F.3d 1317, 1328–29 (2d Cir.1993). Defendants concede that Schallop's comments to the newspaper were a motivating factor in her termination. They contend, however, that it was the manner in which the comments were made rather than their content which motivated the ultimate decision concerning Schallop's employment.

■ An employer may escape liability, even when motivated by an employee's otherwise constitutionally protected speech, if the employer demonstrates by a preponderance of the evidence that the same decision would have been made in the absence of the protected speech. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Coogan v. Smyers*, 134 F.3d 479, 484 (2d Cir.1998).[10] Defendants contend that regardless of Schallop's speech, the same decision would have been made not to reappoint her based on what defendants assert was Schallop's average work performance and her poor judgment. *See, e.g.*, Flynn Reply Decl., ¶¶ 14–16, 19–22, 25.

■ Under *Mt. Healthy* defendants must show that the permissible basis for their employment action existed at the time the action was taken and may not rely on evidence acquired after the fact to establish a constitutional basis for taking the challenged action. *See Sagendorf–Teal v. County of Rensselaer*, 100 F.3d 270, 275 (2d Cir.1996) (citing *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995)). Schallop challenges defendants' *Mt. Healthy* defense on this ground, alleging that it is premised on information obtained after the fact.

Questions of fact abound here. For example, as in any *Mt. Healthy* defense, an issue exists of hypothetical causation. The resolu-

---

**10.** In addition, an employer may avoid liability by demonstrating that otherwise protected conduct interfered with its "effective and efficient fulfillment of its responsibilities to the public." *Connick*, 461 U.S. at 150, 103 S.Ct. 1684; *see also Sheppard v. Beerman*, 94 F.3d 823, 827 (2d Cir.1996) ("disruptive effect" standard). That issue has not been raised here, however.

tion of that issue depends heavily on the credibility of the witnesses. Such credibility, of course, presents an issue of fact which cannot be resolved on a motion for summary judgment. *See Fischl v. Armitage,* 128 F.3d 50, 55 (2d Cir.1997) (credibility determination inappropriate on motion for summary judgment); *Sher v. Coughlin,* 739 F.2d 77, 82 (2d Cir.1984) (*Mt. Healthy* defense generally requires fact-finding).

Moreover, defendants assert as a material factor supporting their conclusion that Schallop evidenced bad judgment an event occurring in December 1995. Cunningham Decl., Ex. W (memorandum from Schallop to Tatro demanding a decision on Schallop's application for reappointment). Schallop has offered evidence, however, that defendants made the decision on her application in November 1995 and contends, therefore, that defendants' reliance on her memorandum is merely pretextual. *See* Alden Dep., p. 69 (advised of decision on Schallop's employment in November 1995); Thornton Dep., pp. 40–41 (same).

Because material issues of fact exist as to this element, both defendants' motion and Schallop's cross-motion for partial summary judgment against Flynn on this ground must be denied.

### 3. Qualified Immunity

 The individual defendants next contend that they are entitled to qualified immunity from liability on Schallop's free speech claims under section 1983. Qualified immunity shields government employees with discretionary responsibilities from liability for civil damages provided their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 812, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Weaver v. Brenner,* 40 F.3d 527, 532–33 (2d Cir.1994). As the Second Circuit has noted:

> The purpose of the qualified immunity doctrine is to balance the need to protect the rights of citizens through damage remedies, with the opposing need "to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of offi-

cial authority." ... The Supreme Court ... [has] expressed its expectation "that damages suits concerning constitutional violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity."

*Danahy v. Buscaglia,* 134 F.3d 1185, 1189 (2d Cir.1998) (citations omitted).

The contours of the constitutional right at issue must be established to the extent that a reasonable official would recognize that his acts violated that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). However, even if the constitutional right at issue was established at the time in question and recognizable to a reasonable official, the official may nevertheless be entitled to qualified immunity "if it was not clear at the time of the acts at issue that an exception did not permit those acts." *Robison v. Via,* 821 F.2d 913, 921 (2d Cir. 1987); *Danahy,* 134 F.3d at 1190. The individual defendants here assert their reasonable belief in the existence of such an exception.

As noted above, government employees enjoy the protection of the First Amendment against adverse government action for the exercise of such rights. *Luck,* 52 F.3d at 476. In certain circumstances, however, such employment may be adversely affected for the exercise of otherwise protected First Amendment rights. *See Pickering,* 391 U.S. at 568–73, 88 S.Ct. 1731 (speech); *see also Elrod v. Burns,* 427 U.S. 347, 367, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (political affiliation). This exception exists in recognition of the strong interest maintained by a public employer "in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731.

Here, the individual defendants contend that when Schallop's employment was terminated in December 1995, they reasonably believed that an AAG was a "policymaker," a policymaker's employment could be terminated for the exercise of otherwise constitutionally protected rights, and, therefore, an exception existed here to the generally appli-

cable rule that government employment may not be adversely affected for the exercise of First Amendment rights. This issue is one of law for decision by a court rather than one of fact for a jury. *Danahy,* 134 F.3d at 1191.

The first question, therefore, is whether as an AAG, Schallop was reasonably perceived as a policymaker by defendants. Applying the categorical analysis for determining the existence of such an exception, recent decisions in this circuit have placed beyond denial defendants' assertion that in December 1995, defendants could reasonably have believed that as an AAG, Schallop held the position of a policymaker.[11] *See Bavaro v. Pataki,* 130 F.3d 46, 50 (2d Cir.1997) (reasonable belief that associate and assistant counsel in state Department of Health were policymakers), *cert. denied,* —— U.S. ——, 118 S.Ct. 1801, 140 L.Ed.2d 941 (1998); *Vona v. County of Niagara,* 119 F.3d 201, 209 (2d Cir.1997) (same as to assistant attorney in county Department of Social Services); *Gordon v. County of Rockland,* 110 F.3d 886, 890 (2d Cir.) (same as to assistant county attorney), *cert. denied,* —— U.S. ——, 118 S.Ct. 74, 139 L.Ed.2d 34 (1997); *Adler v. Pataki,* No. 96–CV–1950, 1998 WL 326748, at *3 (N.D.N.Y. June 19,1998) (Scullin, J.) (same as to deputy counsel for New York Office of Mental Retardation and Developmental Disabilities); *Diederich v. County of Rockland,* 999 F.Supp. 568, 571 (S.D.N.Y.1998) (same as to assistant county attorney); *Butler v. New York State Dep't of Law,* 998 F.Supp. 336, 343 (S.D.N.Y.1998) (same as to AAG); *Simpson v. Vacco,* No. 96–Civ.–3916, 1998 WL 118155, at *3 (S.D.N.Y. Mar.17, 1998) (same); *Doran v. Gorski,* No. Civ.–88–580E, 1989 WL 24510, at *1 (W.D.N.Y. Mar.15, 1989) (same as to assistant county attorney); *O'Connell v. Gorski,* 715 F.Supp. 1201, 1204 (W.D.N.Y.1989) (same); *Bavoso v. Harding,* 507 F.Supp. 313, 316 (S.D.N.Y.1980) (same as to city corporation counsel); *Catterson v. Caso,* 472 F.Supp. 833, 837 (E.D.N.Y.1979) (same as to county attorney); *see also Danahy,* 134 F.3d at 1193 (same as to DoL investigators); *Largo v. Vacco,* 977 F.Supp. 268, 273 (S.D.N.Y.1997) (same).

The question then becomes whether in December 1995, the law was clearly settled that no policymaker exception existed for free speech cases. Schallop contends that the policymaker exception is limited to First Amendment claims based on political affiliation and is inapplicable to free speech claims such as hers.[12] This question was answered by the Second Circuit in *McEvoy v. Spencer,* 124 F.3d 92 (2d Cir.1997). There, the court held that an employee's status as a policymaker is a significant factor in balancing the employee's First Amendment interests against those of the public employer in the effective operation of the workplace but "does not provide an employer with complete insulation...." *Id.* at 103. The court further held, however, that prior to the employment action there in April 1996, "the issue of a policymaker exception [in free speech cases] was not definitively settled *against* employers...." *Id.* Thus, since this issue had not been definitively settled against the defendants here as of December 1995, they were entitled to rely on its existence. Schallop's contention to the contrary must be rejected. *Cf. Kaluczky v. City of White Plains,* 57 F.3d 202, 209–10 (2d Cir.1995).

Therefore, the motion for summary judgment of Vacco, Berens, Alden and Flynn in their individual capacities on the ground of qualified immunity is granted as to Schallop's free speech claims.[13]

---

11. It need not be determined here whether Schallop actually was a policymaker. Rather, the issue is whether defendants could reasonably have concluded that Schallop was a policymaker. *Danahy,* 134 F.3d at 1193. As discussed in part II(D)(2) *infra,* however, Schallop actually held a policymaking position as an AAG.

12. Schallop discontinued the political affiliation claim asserted in her third cause of action. Docket No. 72.

13. Defendants sued in their official capacity are not entitled to the protections of qualified immu-

nity. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Frank,* 1 F.3d at 1327. Thus, as held in part II(B) *supra,* Schallop's free speech claims for reinstatement remain against Vacco and Flynn in their official capacities. *Cf. McConnell v. Adams,* 829 F.2d 1319, 1329 (4th Cir.1987) (reversing damage award against state defendants but affirming order directing reinstatement); *Flood v. State of Ala. Dep't of Indus. Relations,* 948 F.Supp. 1535 (M.D.Ala.1996) (granting summary judgment on all but official capacity claims for reinstatement).

## D. Gender Discrimination Claims

In her fourth, fifth and sixth causes of action, Schallop alleges that defendants discriminated against her based on her gender in violation of Title VII, the Equal Protection Clause and the New York Human Rights Law respectively.

### 1. Individual Liability

 Before considering the merits of Schallop's gender claims, it is necessary to outline which defendants are subject to liability under the applicable statutes. First, as to the individual defendants, the Second Circuit has concluded that there exists no individual liability under Title VII. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995); *see also Wathen v. General Elec. Co.*, 115 F.3d 400, 404 (6th Cir.1997) (collecting cases). Summary judgment is, therefore, granted to the individual defendants as to Schallop's Title VII claim in her fourth cause of action and that claim may be considered only against the DoL. There is no jurisdictional bar to the claim against the DoL because in adopting Title VII, Congress abrogated the state's Eleventh Amendment immunity. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

 Exactly the opposite circumstance pertains to Schallop's state Human Rights Law claim in her sixth cause of action. As noted above, the Eleventh Amendment bars the exercise of jurisdiction over Schallop's state law claim against the DoL. *See* part II(B) *supra*. Individuals, however, may be liable under the state's Human Rights Law if a supervisory employee "exercises control over the terms and conditions of the plaintiff's employment. More precisely, individual liability attaches if the defendant has 'the power to hire and fire plaintiff.'" *Donovan v. Eastern Milk Producers Co–op Ass'n, Inc.*, 971 F.Supp. 674, 680 (N.D.N.Y.1997) (Pooler, J.) (quoting *Storr v. Anderson Sch.*, 919 F.Supp. 144, 148 (S.D.N.Y.1996)). In addition, active participation in the conduct giving rise to the discrimination claims constitute a basis for individual liability. *Tomka*, 66 F.3d at 1317.

 At a minimum issues of fact exist whether Vacco and Flynn had the power to hire or fire Schallop at the time decisions were made concerning her employment at the DoL. Both, therefore, are subject to individual liability under the state Human Rights Law. Although involved in the reappointment process, no evidence in the record suggests that Berens or Alden possessed the authority to hire or fire Schallop. *See* part II(B) *supra*. There is also no evidence that either Berens or Alden was involved in the actual decision to terminate Schallop's employment. *See* Part II(C)(1) *supra*. They, therefore, are not subject to liability on Schallop's state law claim in her sixth clause of action and summary judgment is granted to Berens and Alden on that claim.

### 2. Employees Protected Under Title VII

 Title VII defines employee broadly as "an individual employed by an employer" but exempts several classes from its protection. 42 U.S.C. § 2000e(f). Those excluded from protection under the statute include:

any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, any person chosen by such officer to be on such officer's personal staff, or *an appointee on the policymaking level or an immediate advisor* with respect to the exercise of the constitutional or legal powers of the office.

*Id.* (emphasis added). Defendants contend that Schallop was both a policymaking official and an immediate advisor and, therefore, is not entitled to the protection of Title VII.

Defendants rely primarily on *Americanos v. Carter*, 74 F.3d 138 (7th Cir.), *cert. denied*, 517 U.S. 1222, 116 S.Ct. 1853, 134 L.Ed.2d 953 (1996), which found an Indiana Deputy Attorney General to be a policymaker exempt from Title VII protection. *Id.* at 144. *Americanos* applied the same standard for determining qualification for the policymaking exemption as is applied to claims by government employees that adverse employment actions infringed their First Amendment rights. *Id.* Other courts have reached the same conclusion. *See Lee v. Wojnaroski*, 751 F.Supp. 58, 63 (W.D.Pa.1990). Schallop counters that the exemptions to Title VII

must be construed narrowly and, so construed, have no application here. *See Tranello v. Frey,* 962 F.2d 244, 249 (2d Cir.1992); *EEOC v. Vermont,* 904 F.2d 794, 800 (2d Cir.1990).[14]

*Tranello* is inapposite. The issue presented in *Tranello* was whether an employee appointed by an unelected official fell within a statutory exemption. 962 F.2d at 248–50. In this context the court concluded that the statutory exemptions must be construed narrowly. *Id.; see also Butler,* 998 F.Supp. at 345. In *Butler,* the district court considered Title VII and age discrimination claims to which the policymaking exception had been invoked. Citing *EEOC v. Vermont,* the court recognized that the exemption should be narrowly construed but found that an AAG who appeared in court regularly on behalf of the Attorney General served as his alter ego and accordingly was covered by the exception. *Butler,* 998 F.Supp. at 345; *but see Simpson,* 1998 WL ,118155, at *5 (refusing to apply policymaker exception to an AAG).

The First Amendment determination of a policymaker addresses the same core interest addressed in Title VII's policymaker exception. Both except from their protections those individuals who work closely with or represent high level public officials who are granted the discretion to hire and manage such subordinates free from the constitutional and statutory protections afforded other employees in other circumstances. Because both exceptions address the same core interest, the application of the exception in the two contexts should be the same. Following *Americanos* and *Butler,* then, the First Amendment analysis of policymaking should be applied here to the Title VII exception.

The Second Circuit's test for determining whether a given position is a policymaking one for First Amendment purposes was articulated in *Vezzetti v. Pellegrini,* 22 F.3d 483, 486 (2d Cir.1994), and refined in *Gordon v. County of Rockland,* 110 F.3d 886, 890 (2d Cir.1997). Under that test, a court must consider whether the employee (1) is exempt from civil service protection, (2) has some technical competence or expertise, (3) controls others, and (4) has the power to act and speak on behalf of a policymaker, especially one who is an elected official. *Bavaro v. Pataki,* 130 F.3d 46, 50 (2d Cir.1997). The *Vezzetti* factors are not "an exhaustive list of indicators, nor is any one factor or group of them dispositive." *Vezzetti,* 22 F.3d at 486. *Vezzetti,* therefore, must not be "mechanically applied." *Gordon,* 110 F.3d at 890. Beyond *Vezzetti,* a comparison of the position in question with others which the Second Circuit has already deemed policymaking positions is also relevant to this determination. *See Id.*

Here, Schallop's position as an AAG was one exempt from civil service protection. *Butler,* 998 F.Supp. at 342–43; *DeLucia v. Lefkowitz,* 62 A.D.2d 674, 406 N.Y.S.2d 150, 152 (3d Dep't 1978), *aff'd,* 48 N.Y.2d 901, 424 N.Y.S.2d 897, 400 N.E.2d 1349 (1979). As in *Butler,* when Schallop commenced her employment with the DoL, she was notified that her "appointment is terminable by me at will—that is, you serve at the pleasure of the Attorney General." Cunningham Decl., Ex. C.[15] As to the second factor, an attorney, like Schallop, possesses technical expertise and competence that distinguishes her from other employees. *Vona,* 119 F.3d at 209; *Butler,* 998 F.Supp. at 343. The first two *Vezzetti* factors, therefore, weigh in favor of concluding that Schallop held a policymaking position.

The third factor, however, favors Schallop. No evidence in the record suggests that Schallop's position as an AAG placed her in a

---

**14.** The holding in *Vermont* was later overruled by the Supreme Court in an unrelated case, *Gregory v. Ashcroft,* 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991).

**15.** Schallop contends that since her position was subject to most provisions of the Civil Service Law, this first *Vezzetti* factor should weigh in her favor. Pl.'s Mem. of Law, pp. 33–34. She concedes, however, that she was not protected by Civil Service Law section 75, which protects employees from dismissal without cause. It seems clear, however, that this factor generally contemplates section 75 (protecting employees from arbitrary dismissals) rather than provisions like those cited by Schallop concerning, for example, age requirements (section 54), the examination of blind or handicapped applicants (section 55) or the consequences of subversive activities (section 105).

supervisory role over other DoL employees. The absence of supervisory responsibilities suggests that the person is not a policymaker.

Finally, as to the fourth factor, the Court must consider whether as an AAG Schallop possessed the power to act and speak on behalf of an elected policymaker. The DoL's job description for AAGs includes "appearing for the Attorney General before State and Federal Courts, preparing, presenting, and arguing, cases, examining witnesses, conducting hearings under oath and preparing evidence, briefs and memoranda of law." Cunningham Decl., Ex. E; *see also Butler*, 998 F.Supp. at 343. In managing their caseloads, litigation attorneys within the DoL exercise significant independence and discretion. *See DeLucia*, 406 N.Y.S.2d at 153 ("The Assistant Attorney General performs [her] duties in the name of and on behalf of the Attorney General. He or she acts independently when making legal decisions or in *deciding matters of policy*."). AAGs also advise state agencies and employees on legal matters and may be responsible for communicating the DoL's position on a given matter to persons in the legislative and executive branches of government. Berens Decl., ¶¶ 12–14. This fourth factor thus weighs against Schallop.

Application of the *Vezzetti* factors to the facts of this case compel the conclusion that Schallop's position as an AAG was a policymaking one. Additionally, a review of Second Circuit caselaw reveals that among the positions held to be policymaking have been a highway superintendent, *Vezzetti*, 22 F.3d at 486; a deputy tax receiver, *Regan v. Boogertman*, 984 F.2d 577, 581 (2d Cir.1993); and a confidential secretary to the director of a county correctional facility, a county coordinator for Pre–Trial Release Services and a First Deputy Service Officer for a county

Veterans Service Agency, *Savage v. Gorski*, 850 F.2d 64, 69 (2d Cir.1988); *see also Danahy*, 134 F.3d at 1192 (citing cases from other circuits). Especially instructive in this regard is the Second Circuit's recognition that "[a]ll circuit court decisions—and almost all other court decisions—involving attorneys in government service, other than public defenders, have held that ... these positions" are not protected. *Gordon*, 110 F.3d at 890 (citation omitted).

Because Schallop's position as an AAG was that of a policymaker under *Vezzetti*, her employment falls within the exception under Title VII. Defendants' motion as to the Title VII claim must, therefore, be granted.[16]

### 3. Merits

In the fourth, fifth and sixth causes of action in the amended complaint, Schallop alleges that the termination of her employment resulted from her status as a woman with young children employed part-time. Schallop asserts discrimination based on both disparate treatment and disparate impact. Either theory may support her claim. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

### a. Disparate Treatment[17]

This claim implicates the burden-shifting analysis enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, a plaintiff bears the initial burden of presenting a *prima facie* case of discrimination, the defendant must then demonstrate a legitimate, nondiscriminatory reason for its actions, and the plaintiff must then establish that the defendant's stated reasons were a pretext for discrimination. *Id.* at 802–04, 93 S.Ct. 1817. All elements are contested here.

---

**16.** Defendants also argue that Schallop is exempt from Title VII protection under the "immediate advisor" exception. They rely principally on *Rutland v. Moore*, 54 F.3d 226, 231 (5th Cir. 1995), which held that AAGs in Louisiana fit within this exception. Because Schallop was a policymaker and, therefore, unprotected by Title VII, the immediate advisor exception need not be addressed.

**17.** The analysis of a disparate treatment claim under Title VII applies to claims arising from the same facts under the Equal Protection Clause, *Howard v. Senkowski*, 986 F.2d 24, 27 (2d Cir. 1993), and state law, *Song v. Ives Lab., Inc.*, 957 F.2d 1041, 1046 (2d Cir.1992). The discussion here thus applies with equal force to Schallop's claims under those provisions.

A gender discrimination plaintiff establishes a *prima facie* case by showing (1) membership in a protected class, (2) that he or she was qualified for the position, (3) an adverse employment action, and (4) the ultimate filling of the position by a person outside the protected class. *Fisher v. Vassar College,* 114 F.3d 1332, 1335 (2d Cir.1997) (in banc), *cert. denied,* — U.S. —, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998) (*"Fisher II"*). The fourth element has alternatively been phrased to require a showing that the plaintiff was terminated under circumstances giving rise to an inference of discrimination. *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995). A plaintiff's burden in establishing the *prima facie* case is "minimal." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Fisher II,* 114 F.3d at 1335; *see also Tout v. County of Erie,* 2 F.Supp.2d 320, 325 (W.D.N.Y.1998) (describing burden as "de minimis"); *Lew v. Radiation Dynamics, Inc.,* 995 F.Supp. 106, 113 (E.D.N.Y.1998) ("low"); *Barcher v. New York Univ. Sch. of Law,* 993 F.Supp. 177, 183 (S.D.N.Y.1998) ("not onerous").

Schallop alleges that the protected class here is women with young children who were employed part-time. It is well established that gender combined with a second characteristic may constitute a protected group for purposes of Title VII. *See, e.g., Newport News Shipbldg. & Dry Dock Co. v. EEOC,* 462 U.S. 669, 682–84, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983) (women who are pregnant); *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971) (women with pre-school-aged children). Schallop's allegation of such "gender plus" protection suffices to meet her initial burden. Schallop's gender plus claim, however, asserts two characteristics secondary to her gender—having young children and working part-time. Am Compl., ¶ 67; Pl.'s

Mem. of Law (Docket No. 72), p. 27. Schallop's evidence focuses almost exclusively on women working part-time and is insufficient to support a claim based on young children as a secondary characteristic.[18] Defendants, therefore, are entitled to summary judgment on Schallop's claims based on this secondary characteristic. Her gender plus claim will be considered as one based solely on her status as a woman working part-time.

As to the second and third elements of a *prima facie* case, Schallop has offered evidence sufficient to establish that she was qualified for the position of AAG and that an adverse employment action, the termination, was taken. Defendants challenge the sufficiency of Schallop's showing on the fourth element. However, given the conclusion below on the ultimate question of discrimination, it will be assumed without deciding here that Schallop has met her minimal burden of establishing the fourth element.[19]

The burden then shifts to defendants to demonstrate a legitimate, nondiscriminatory reason for their decision to terminate Schallop's employment. This burden is one of production, not persuasion, and requires only the articulation, but no proof, of such reason. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). By alleging that Schallop's employment was terminated for deficient performance and bad judgment, defendants have met their burden here.

The burden then shifts to Schallop to demonstrate that the stated reason was merely a pretext for discrimination. Here, Schallop has established, among other things, that her employment was terminated after an extended period of review, contrary to the recommendations of at least two members of the review committee that she be rehired and after she publicly voiced criticism of her superiors for the employment terminations of

---

**18.** The evidence is limited to the statements of seven women who worked part-time as AAGs that they also had young children. *See* Docket No. 67. There is no anecdotal evidence or statistical analyses or comparisons involving this secondary characteristic.

**19.** Assuming the existence of a *prima facie* case "does not necessarily tell much about whether

discrimination played a role in the employment decision. The fact that a plaintiff is judged to have satisfied these minimal requirements is no indication that, at the end of the case, plaintiff will have enough evidence of discrimination to support a verdict in [her] favor." *Fisher II,* 114 F.3d at 1337.

other AAGs. These facts suffice to raise a question of fact whether defendants' asserted reason for terminating Schallop's employment was pretextual. *See also* part II(C)(2)(b) *supra*.

■ The existence of factual questions whether defendants' stated reason was pretextual does not end the inquiry into pretext, however. Rather, it serves instead as a predicate to the ultimate question whether, assuming such pretext, it was for the purpose here of discrimination against Schallop as a woman employed part-time. *See St. Mary's Honor Ctr.*, 509 U.S. at 511, 113 S.Ct. 2742; *Fisher v. Vassar College*, 70 F.3d 1420, 1437 (2d Cir.1995) ("*Fisher I*"), *reh'g in banc*, 114 F.3d 1332 (2d Cir.1997), *cert. denied*, — U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). "It is not enough ... to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 519, 113 S.Ct. 2742.

To raise a question of fact that the asserted pretext was created at least in part for discrimination against Schallop as woman working part-time, Schallop has offered sufficient evidence concerning the secondary characteristic of part-time employment. For example, Schallop has offered evidence that Flynn considered her part-time status as a factor in determining whether she should be reappointed. Flynn Dep., pp. 205–06. During the period under which her reappointment was under consideration, Schallop was repeatedly asked if she was willing to return to full-time employment. Schallop Aff. (Docket No. 65), ¶¶ 41 & 43.[20] Two part-time AAGs suffered adverse employment actions under circumstances suggesting defendants' animus toward part-time employment. Knox Aff. (Docket No. 67) (AAG in another bureau advised she was not being rehired because she was part-time); Walsh Aff. (Docket Nos. 68–70), Ex. W (AAG denied shift to part-time employment following return from maternity leave).

Part-time employment alone, however, is not a protected status. It may constitute a protected status only in conjunction with evidence that women employed part-time suffered discrimination. To establish this connection, Schallop offers anecdotal evidence of three events and a statistical comparison. The first anecdote is that her position was filled by a male. However, Schallop initially testified that she was replaced by a woman. Schallop Dep., pp. 32–33. Later, she contended that her position was filled in DoL records by a male. That male was hired in a supervisory position in a different bureau in a different city. Berens Reply Decl. (Docket No. 74), ¶¶ 8–10. Absent a showing that Schallop was replaced in her principal functions by a male rather than only in an administrative document, this evidence offers no support for Schallop's claim. *See LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 846 (1st Cir.1993) (person not hired to perform the duties of fired employee is not a replacement within meaning of *McDonnell Douglas*); *Hawkins v. Ceco Corp.*, 883 F.2d 977, 982 (11th Cir.1989) (same).

The second anecdote concerns Schallop's comment to the media. At the same time Schallop made her comment to a reporter, a male AAG made similar comments. Cunningham Decl., Ex. EE. The male AAG suffered no formal adverse consequences. The male AAG, however, had already completed the reappointment process and also was employed full-time. Without more, there is insufficient evidence here that the different treatment of Schallop and the male AAG was related to gender rather than other factors, such as job performance, full-time versus part-time status, expertise or even political affiliation.

The third anecdote concerns a DoL document listing the AAGs in the Albany Litigation Bureau. The document was generated during DoL's preliminary employment review process. Next to the names of Schallop and another AAG, a woman employed part-time, was a typewritten "T." Walsh Aff., Ex. P. The "T" indicated that the employee would be terminated. *Id.*, Ex. N. After receiving an endorsement from someone out-

---

**20.** Schallop apparently agreed to return to work full-time prior to the termination of her employ-

ment. Schallop Dep., pp. 230–31.

side the DoL, the second woman was reappointed. *Id.,* Ex. Q. Schallop contends that this evidence permits the inference that she and the other AAG were designated because they were women employed part-time. Again, there is no suggestion from this evidence that the designation arose in any way from these individuals' gender rather than from a multitude of other factors.

Finally, Schallop offers the following statistical analysis. There were thirty-two women and one male employed part-time when Vacco became Attorney General. The man and two women resigned. The employment of thirteen of the remaining thirty was terminated. The rate of termination in this group was thus 43.3%. The rate of termination among full-time male employees and among all full-time employees was 23–26%. The difference is statistically significant. Cunningham Decl., Ex. KK. To support Schallop's claim, the most relevant comparison would, of course, be to men employed part-time as AAGs. No such group exists here, however. *See Fisher I,* 70 F.3d at 1446 ("Absent this sex-to-sex comparison on a statistically sound basis, plaintiff's statistics are meaningless. . . ."). This fact alone vitiates the value of Schallop's statistical comparison. *Id.; see also Coleman v. B–G Maintenance Management of Colo. Inc.,* 108 F.3d 1199, 1204 (10th Cir.1997); *Longariello v. School Bd. of Monroe County, Fla.,* 987 F.Supp. 1440, 1449 (S.D.Fla.1997).

*Fisher I* suggests in dicta, however, that "[i]n an instance in which the complainant establishes by evidence that there are no [similarly situated] males and that it is unlikely that there would be any, then it may be that the complainant would be able to prevail by providing some other evidence of discrimination. . . ." 70 F.3d at 1447 n. 12. First, however, Schallop has failed to "establish by evidence" that a group of men working part-time is unlikely to exist. More importantly, as discussed above, Schallop has failed to offer any other evidence of discrimination.

Schallop has failed to offer evidence sufficient to create a question of fact whether defendants' termination of her employment was the result of her status as a woman working part-time. Thus, defendants' motion for summary judgment as to her claims of disparate treatment must be granted as to the Equal Protection Clause and Human Rights Law claims, and, as an alternative ground, on the Title VII claim.

**b. Disparate Impact**

 Disparate impact claims allege the illegality of a facially neutral employment practice because of the significant adverse impact it has on a particular, protected class of employees. *Watson,* 487 U.S. at 986, 108 S.Ct. 2777. A plaintiff proceeding on a disparate impact theory need not prove a discriminatory motive. *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 644, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). A disparate impact claim exists when:

> (1) the plaintiff demonstrates that an employer uses a particular employment practice that causes a disparate impact on the basis of sex and the employer fails to demonstrate that the challenged policy is job-related for the position in question and consistent with business necessity; or (2) the plaintiff demonstrates that an alternative employment practice was available to alleviate the disparate impact of a policy and the employer has refused to adopt the alternative employment practice.

*Diehl v. Xerox Corp.,* 933 F.Supp. 1157, 1164 (W.D.N.Y.1996) (citing 42 U.S.C. § 2000e–2(k)(1)(A)).

The first step in disparate impact cases is to identify the challenged employment practice. Schallop contends that because it would be impossible to isolate one particular aspect of the reappointment process, the entire process may be characterized as a single employment practice. *See* 42 U.S.C. § 2000e–2(k)(1)(b)(i). When employment decisions are made based on variable, subjective criteria, this approach is appropriate under Title VII. *See Stender v. Lucky Stores, Inc.,* 803 F.Supp. 259, 335 (N.D.Cal.1992).

After identifying the challenged practice, a plaintiff then bears the burden of offering "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants

 

for jobs or promotions because of their membership in a protected class." *Watson,* 487 U.S. at 994, 108 S.Ct. 2777. The statistical report from Schallop's expert focuses on a comparison of the termination rates for part-time female AAGs and full-time male AAGs. This comparison is inadequate to support a disparate impact claim because it does not demonstrate that Schallop was terminated for membership in a protected group. *See Id.* Schallop's "gender plus" claim asserts that the protected group is female AAGs working part-time. The essential underpinning of any gender plus claim, however, is discrimination based on gender. *Coleman,* 108 F.3d at 1203. Comparing women working part-time with men working full-time provides no guidance because it is impossible to discern from those statistics whether any disparity is based on gender or on part-time status, a classification not protected. *Ilhardt v. Sara Lee Corp.,* 118 F.3d 1151, 1155 (7th Cir.1997). Moreover, the other statistical evidence in the record demonstrates no disparity between men and women working full-time. Schallop's own expert found that termination rates for men and women working full-time "were not statistically different." Cunningham Decl., Ex. KK. This evidence amplifies the insufficiency of the comparison offered by Schallop.

Schallop's failure to produce statistical evidence showing that discrimination existed premised on membership in a protected class bars her disparate impact claim. Defendants' motion must be granted on this ground as to Schallop's Human Rights Law claim and, as an alternative ground, as to the Title VII claim.[21]

### E. "John Doe" and "Jane Roe"

Schallop named as defendants "John Doe" and "Jane Roe" in both their individual and official capacities. These individuals have not otherwise been identified and the deadline has long passed for the further amendment of pleadings and joinder of parties. *See* Docket No. 10 (Deadline was February 1, 1997 for joinder of parties and April 1, 1997

for amendment of pleadings). Accordingly, the amended complaint is dismissed as to these defendants in all respects. *Cf. Gold Star Taxi & Transp. Serv. v. Mall of America Co.,* 987 F.Supp. 741, 753 (D.Minn.1997) (dismissing John Doe defendant where plaintiff unable to identify individual following discovery and summary judgment was being entered for remaining defendants); *Haussman v. Fergus,* 894 F.Supp. 142, 150 (S.D.N.Y.1995) (same).

### III. Conclusion

**WHEREFORE,** for the reasons set forth above, it is hereby

**ORDERED** that defendants' motion for summary judgment is **GRANTED** in all respects *except* as to the free speech claims for reinstatement in the first two causes of action of the amended complaint against defendants Vacco and Flynn in their official capacities, as to which defendants' motion is **DENIED;** and

**IT IS FURTHER ORDERED** that Schallop's cross-motion for partial summary judgment against defendant Flynn is **DENIED;** and

**IT IS FURTHER ORDERED** that the amended complaint is **DISMISSED** as to defendant "John Doe" and "Jane Roe" in all respects;

**IT IS FURTHER ORDERED** that the Clerk of the Court serve a copy of this order, by regular mail, upon all parties to this action.

**IT IS SO ORDERED.**

---

**21.** An Equal Protection Clause claim may proceed only under the disparate treatment theory because proof of any intent to discriminate is required for such a claim. *Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Therefore, to the extent that Schallop asserts a disparate impact theory as part of her Equal Protection Clause claim, defendants' motion is granted as to that claim.